# EXHIBIT 1

## EMPLOYMENT AGREEMENT

THIS AGREEMENT is made as of June 22, 2012 (the "Effective Date").

B E T W E E N:

>PRINTERON AMERICA CORPORATION a corporation incorporated under the laws of California, in the Country of United States of America,

>>(the "Corporation")
>>OF THE FIRST PART

>- and -

>DENIS DRENI of the New York City borough of Queens in the State of New York, in the Country of United States of America,

>>(the "Employee")
>>OF THE SECOND PART

WHEREAS:

A. The Corporation and the Employee are entering an employment relationship for their mutual benefit.

B. The Corporation and the Employee have agreed that the terms and conditions of the employment relationship shall be as set out herein.

NOW THEREFORE THIS AGREEMENT WITNESSETH that in consideration of the premises and the mutual covenants herein contained and other good and valuable consideration now provided by each Party hereto to each other Party hereto (the receipt and sufficiency whereof is hereby acknowledged), the Parties hereto agree as follows:

### ARTICLE 1 - DEFINITIONS AND SCOPE OF EMPLOYMENT

1.1 Definitions. In this Agreement:

A. "Affiliate" has the meaning ascribed thereto in the *Business Corporations Act* (Ontario);

B. "Business" means cloud based mobile printing services or products;

C. "Cause" means and shall include, without limitation:

   a) conviction of a felony or indictable offence, the effect of which will impair or impede the Employee in carrying out his duties pursuant to this Agreement, or

   b) a material breach by the Employee of any material representation, warranty, covenant or agreement contained in this Agreement or the Proprietary Information and Inventions Agreement, or

   c) gross and willful misconduct by the Employee which will have a material and adverse impact on the Corporation, or

   d) the Employee's commission of an act involving embezzlement or fraud, or

   e) gross and willful malfeasance or gross and willful non-feasance by the Employee which will have a material and adverse impact on the Corporation;

D. "$" means United States Currency; "CDN$" means Canadian currency;;

E. "Employment Commencement" means on or about June 25, 2012

F. "Person" means an individual, partnership, corporation or other entity; and

G. "PrinterOn Group" means the Corporation and/or any current or future subsidiary, parent company related company or Affiliate of any of the foregoing, including, without limitation, PrinterOn Inc. and PrinterOn Corporation.

1.2   Employment. The Corporation hereby agrees to employ the Employee and the Employee hereby agrees to be employed on a full time basis in the position of Director of Strategic Alliances & Enterprise Accounts, reporting to the Vice President Sales & Marketing of the Corporation. The Employer and the Employee acknowledge that such employment commences on the date of Employment Commencement. Despite any services you may provide to any subsidiary, parent company, related company or Affiliate of the Corporation from time to time, the Employee acknowledges and agrees that, subject to any applicable legislation, his employment relationship is and shall remain exclusively with the Corporation.

1.3   Duties and Responsibilities. The duties and responsibilities of, and the powers to be exercised by, the Employee shall be as determined from time to time by the CEO & President or the Vice President of Sales & Marketing of PrinterOn Corporation, and include all items in Exhibit A provided that such duties, responsibilities and powers are consistent with the position held by you.

1.4   Full and Faithful Service. The Employee will devote to the business and affairs of the PrinterOn Group all of the time and attention reasonably necessary to carry out his duties, and will ensure that he is not at any time engaged in conduct which would constitute a conflict with



the interests of the PrinterOn Group. During his employment with the Corporation, the Employee shall not engage in any other employment or gainful occupation, undertake any other business, or become a director, officer or agent of any other company, firm or individual without the express written consent of the CEO & President or Vice President of Sales & Marketing of the Corporation, such consent not to be unreasonably withheld.

1.5 <u>Home Office and Employee Availability.</u> The Employee shall maintain a home office at Employee's own expense such that the PrinterOn Group's business may be conducted at any hour during a day. This is required as a result of the global distribution of the PrinterOn Group's products and the necessity to conduct business during the normal business hours of customers in any country in the world. The Corporation shall have no obligation to compensate the Employee for expenses associated with maintaining the home office, or for the Employee's time spent conducting business from home save and except for the remuneration outlined in this Agreement.

1.6 <u>Acknowledgment.</u> The Employee acknowledges that the effective performance of their duties requires the highest level of integrity and the Corporation's complete confidence in the Employee's relationship with other employees of the PrinterOn Group and with all persons dealt with in the course of his employment. The Employee shall diligently, faithfully and honestly serve the Corporation during the continuance of his employment hereunder and shall use his best efforts to promote the interests of the PrinterOn Group.

## ARTICLE 2 - TERM OF EMPLOYMENT

2.1 <u>Term</u>. Until terminated as provided in Article 4 of this Agreement, the term of employment created herein shall continue indefinitely.

## ARTICLE 3 - REMUNERATION

3.1 <u>Salary</u>. As remuneration for his services hereunder, the Employee shall be paid a base salary, subject to adjustments as hereinafter provided (the "Base Salary"), at the rate of $135,000 per annum, which Base Salary shall be paid in arrears and in 24 equal installments, subject to all necessary statutory deductions. Such Base Salary shall be reviewed by the Corporation at the end of each fiscal year of the Corporation but with no obligation to effect an increase thereof.

3.2 <u>Commission.</u> In addition, the Employee will receive commission based upon sales revenue procured in the Employee's assigned market space as detailed in Exhibit A. Commission rates will be reviewed annually at the start of the Corporation's fiscal year (May 1).

3.3 <u>Benefits</u>. The Employee will be entitled during the course of his employment with the Corporation to participate in the employee benefit plans and programs of the Corporation which are made available to employees of the Corporation in the jurisdiction of residence of the Employee generally from time to time. The cost of the benefit plan will be paid by the Corporation. All employee medical, dental and life (life insurance for the Employee only) benefit plans and programs of the Corporation shall continue during any notice period referred to in Subsection 4.1 D. hereof. All employee long-term disability benefit plans and programs of the



3

Corporation shall, in the event of termination pursuant to Subsection 4.1 D. continue for a period of time equivalent to the period of notice which the Corporation would, but for the provisions of Subsection 4.1 D., otherwise have been required to provide to the Employee pursuant to applicable legislation, in the event of termination of the type contemplated by Subsection 4.1 D.

3.4 <u>Vacation</u>. The Employee shall be entitled to four (4) weeks paid vacation leave in each calendar year that this Agreement is in effect. Such vacation shall be taken at such time or times as the Corporation may determine having regard to the business and undertaking of the Corporation. In the event the Employee's employment is terminated, the Employee shall be entitled to a prorated vacation leave with pay for the portion of the year that he has been actively employed. It is the responsibility of the Employee to ensure that his vacation entitlement is taken as there shall be no more than 20 days vacation carry forward to a year other than that for which it has accrued, provided that once Employee has 20 days accrued vacation, he shall not accrue any further vacation.

3.5 <u>Expenses</u>. During the term of his employment with the Corporation, the Employee shall be reimbursed for all reasonable travel and business expenses incurred by him in the performance of his duties hereunder, subject to such limitations as may be established by the Corporation and revised by it from time to time and subject to the limitations set out in Sections 1.5 and 1.6 of this Agreement. As a condition to the reimbursement of such expenses, the Employee shall furnish to the Corporation receipts for expenses incurred. Company shall review all expenses in a timely manner and upon approval reimburse employee with 15 business days of approval.

## ARTICLE 4 - TERMINATION OF EMPLOYMENT

4.1 <u>Terms and Conditions</u>. The employment contemplated hereunder may be terminated in the following manner and in the following circumstances:

A. by the Corporation at any time for Cause, in which case the Employee's employment shall terminate immediately upon receipt of a written notice from the Corporation to the Employee setting out the cause for termination;

B. by the Corporation upon the death of the Employee, in which case their employment pursuant to this Agreement shall terminate on the date of death and the Corporation shall pay the Employee's estate their outstanding Base Salary and any applicable outstanding commissions up to the date of such termination plus outstanding earned vacation pay, plus any valid outstanding expense reimbursements owing to the Employee;

C. by the Corporation if the Employee is unable to discharge his duties hereunder by reason of illness, disease, mental or physical disability or otherwise, for an aggregate of four months in any one year, whether or not consecutive, in which case his employment pursuant to this Agreement shall terminate on the date that such inability aggregates four months and the Corporation shall pay the Employee his Base Salary for the portion of the year that he has been employed and any applicable payment required by applicable legislation. In the event of termination pursuant to this Subsection 4.1 C., you will be



4

eligible to make a claim under any disability policy that may be applicable to you in accordance with its terms.

D. by the Corporation for any reason other than a termination pursuant to subsection 4.1 (A), (B) or (C), upon providing a lump sum payment of an amount equal to either (a) if in the first ninety (90) days of employment with the Corporation following the Effective Date, an amount equal to one (1) month's Base Salary and any applicable outstanding commissions up to the date of such termination plus any valid outstanding expense reimbursements owing to the Employee, or (b) if after the first ninety (90) days of employment, an amount equal to six (6) months' Base Salary plus two (2) additional weeks of Base Salary for each full year of employment with the Corporation following the Effective Date (to a maximum of twelve (12) additional months of Base Salary) and any applicable outstanding commissions up to the date of such termination plus any valid outstanding expense reimbursements owing to the Employee; or

E. by the Employee for any reason, upon providing one month's written notice to the Corporation, provided that the Corporation may terminate the Employee forthwith after receiving the Employee's notice of termination at any time and without any obligation on the part of the Corporation to provide notice or remuneration to the Employee in the case where the Corporation terminates the Employee for Cause or, in the case of a termination for any reason other than for Cause, upon payment to the Employee by the Corporation of an amount equal to four weeks' Base Salary.

In the event of termination pursuant to any of Subsections 4.1 A, B, C, D, or E, the Corporation shall pay to the Employee his Base Salary to the date of termination and shall reimburse the Employee for valid business expenses incurred prior to such date upon the presentation of receipts and in accordance with the Corporation's policies then in effect.

4.2 Earned Vacation Pay. In the event of any termination pursuant to Section 4.1, the Corporation shall pay to the Employee all outstanding earned vacation pay up to the date of termination.

4.3 Release of Claims. Upon payment of the amounts due upon termination of employment under the applicable Subsection 4.1 B – E, the employment of the Employee shall be wholly terminated and this Agreement shall cease to have any further effect save and except in respect of Articles 5, 6, and 7 hereof and any express obligation in this Agreement to continue some or all of the benefits under the Corporation's group benefits plan following the date of termination of employment which shall continue in full force and effect. Upon any such termination, the Employee shall have no claim against the PrinterOn Group for damages, termination pay, severance pay, pay in lieu of notice of termination, statutory or otherwise, except in respect of payment of remuneration earned, due and owing to the effective date of termination and the right to dispute whether the termination was for Cause. The payment of any amounts by the Corporation in excess of any amounts owing to the Employee pursuant to applicable legislation and arising as a result of the termination of the Employee's employment are conditional upon the execution by the Employee of a full and final release of all claims and possible claims, as well as an indemnity for the Employee's taxes, in favour of the PrinterOn Group and its shareholders,



CONFIDENTIAL

PON 000145

directors, officers and employers in a form acceptable to the Corporation. Such full and final release and indemnity shall include provisions requiring the Employee to maintain the confidentiality of the terms of this Agreement.

4.4     Reasonableness. The Parties further acknowledge and agree that if the payment referred to in Subsection 4.1 D hereof is made, such payment constitutes a reasonable estimate of the damages that might be suffered by the Employee for termination of this Agreement, such amount being liquidated damages and not a penalty.

4.5     Employment Standards. Notwithstanding any other provision of this Agreement, in the event of a termination of the employment of the Employee pursuant to Subsections 4.1 D or E hereof, the amount payable to the Employee by the Corporation shall be the greater of: (a) the amount specified in Subsection 4.1 D or Subsection 4.1 E, as the case may be; or (b) the amount payable by the Corporation to the Employee in connection with termination by the Corporation of the employment of the Employee in the circumstances described in Subsection 4.1 D or E, as the case may be, pursuant to any applicable legislation.

## ARTICLE 5 - CONFIDENTIALITY

5.1     Proprietary Information and Inventions Agreement. In connection with his continued employment with the PrinterOn Group pursuant to the terms of this Agreement, the Employee shall execute, prior to execution hereof by the Corporation, the Corporation's standard Proprietary Information and Inventions Agreement attached hereto as Exhibit B, the terms of which are incorporated herein by reference.

## ARTICLE 6 - NON-SOLICITATION

6.1     Non-Solicitation. During the Employee's employment with the Corporation and for a period of twelve (12) months thereafter, the Employee shall not alone or on behalf of or in connection with any other Person, directly or indirectly in any capacity whatsoever including, without limitation as a partner, officer, director, employee, consultant, agent, independent contractor or shareholder:

   a)   canvass or solicit any business from any customer or Prospective Customer (the term "Prospective Customer" means any Person canvassed or solicited by the PrinterOn Group at any time during the two (2) years prior to the date upon which the Employee ceases to be employed by the Corporation) of the PrinterOn Group for the purpose of providing to such customer or Prospective Customer products or services competitive or similar those offered by the PrinterOn Group, or

   b)   employ, offer employment to or solicit the employment or engagement of or otherwise entice away from the employment of the PrinterOn Group any individual who is employed by the PrinterOn Group or who resigns from employment by the PrinterOn Group in order to accept a direct or indirect offer of employment or engagement from the Employee or any other Person.



## ARTICLE 7 – NON-COMPETITION

7.1 <u>Non-Competition</u>: Subject to the terms set out in Exhibit A and B, during the Employee's employment with the Corporation and for a period of twelve (12) months thereafter, the Employee shall not, without the prior written consent of the Corporation, alone or on behalf of or in connection with any other Person, directly or indirectly in any capacity whatsoever including, without limitation, as a partner, officer, director, employee, consultant, agent, independent contractor or shareholder:

   a) Engage in, carry on or otherwise have any financial or other concern or interest (including, without limitation, an interest by way of royalty or other compensation arrangements), advise, lend money to, guarantee the debts or obligations of, or permit the Employee's name or any part thereof to be used or employed by any division, department, branch or unit of any undertaking which is engaged in, carries on, is concerned with or interested in a business which is the same as or substantially similar to, or which competes with or would compete, with the Business carried on by the Corporation or any of its Affiliates in any country within which PrinterOn then carries on the Business ("Prohibited Conduct").

   b) Nothing herein shall prevent the Employee from owning, beneficially or otherwise, for investment purposes only, any securities to which 5% of the voting rights are attached of any corporation or other entity whose securities are listed on a recognized stock exchange or traded in the over-the-counter market in Canada or the United States of America, and which carries on a business which is the same as or substantially similar to, or which competes with or would compete with the Business.

The Employee hereby acknowledges that all provisions in this Employment Agreement are reasonable as between the Employee and the Corporation in the context of his employment with it. The Employee acknowledges and agrees that all provisions in this Agreement are reasonable with reference to the public interest in free and open competition based upon the parties' knowledge of the market and the industry in which the Corporation is engaged. Specifically, the Employee agrees that any court of competent jurisdiction shall be ignoring the intention of the parties and the parties' reasoned assessment of the reasonableness of the provisions with reference to the public interest in free and open competition should it find otherwise. The Employee agrees that his compliance with his obligations pursuant to this Agreement will not unduly restrict or curtail his legitimate efforts to earn a livelihood in his chosen area of endeavour following his employment with the Corporation.

## ARTICLE 8 - GENERAL



8.1     Entire Agreement. This Agreement, together with all Exhibits attached hereto and the terms hereof and thereof, shall constitute the entire agreement between the Parties hereto with respect to all of the matters herein and the Parties hereto acknowledge and agree that execution hereof and thereof has not been induced by, nor does either of the Parties hereto rely upon or regard as material, any representations or writings whatsoever not incorporated herein and made a part hereof. This Agreement shall not be amended, altered or qualified except by an agreement in writing signed by both of the Parties hereto.

8.2     Notices: Any notice or communication given or required to be given shall be in writing and may be delivered, mailed by registered mail, or sent by facsimile or similar telecommunication device and shall be deemed:

    a.    in the case of delivery, to have been duly given when the same is delivered to the Corporation or the Employee at the addresses hereinafter set forth (or personally in the case of the Employee);

    b.    if addressed to such Party at its address as set forth hereafter or to such other address as such Party may have by notice in writing furnished to the Party seeking or desiring to give notice as a place for the giving of notice:

        1.    in the case of dispatch by registered mail, except during a postal disruption, actual or threatened, to have been duly given at 5:00 o'clock in the afternoon (local time of the sender) on the fourth business day after the day the same was deposited in a governmental public post box or governmental post office,

        2.    in the case of dispatch by facsimile or similar telecommunication device to have been duly given the next business day after dispatch is made by means of a facsimile or other telecommunication device, and if addressed as follows:

if to the Corporation, at:

PrinterOn America Corporation
221 McIntyre Drive
Kitchener, Ontario,
Canada N2R 1G1
Attention:     President
Facsimile:     (519) 748-9457

if to the Employee, at:

Denis Dreni
2660 30th Street Ap 2F
Astoria, NY
USA

11102
Telephone: (425) 642-0772

8.3   Further Assurances. The Parties hereto and each of them hereby consents and agrees to do such things, attend such meetings and to execute such further documents and assurances as may be deemed necessary or advisable from time to time in order to carry out the terms and conditions of this Agreement in accordance with its true intent.

8.4   Waivers. No waiver of any breach of default of any of the provisions hereof shall be effective unless in writing and signed by the Party to be charged with such waiver. No waiver shall be deemed a continuing waiver or waiver in respect of any subsequent breach of default, either of a similar or different nature, unless expressly so stated in writing.

8.5   Severability. Each provision herein shall be treated as a separate and independent clause, and the un-enforceability of any one clause shall in no way impair the enforceability of any of the other clauses herein. Moreover, if one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to scope, activity, subject or otherwise so as to be unenforceable at law, such provision or provisions shall be construed by the appropriate judicial body by limiting or reducing it or them, so as to be enforceable to the maximum extent compatible with the applicable law as it shall then appear.

8.6   Headings. The insertion of headings and the division of this Agreement into Sections and Subsections is for convenience of reference only and shall not affect the interpretation hereof.

8.7   Assignment. This Agreement may not be assigned by the Employee without the prior written consent of the Corporation, which consent may be withheld for any reason.

8.8   Enurement. This Agreement shall enure to the benefit of and be binding upon the Parties hereto and their respective heirs, executors, legal personal representatives, successors and assigns of the Corporation and permitted assigns of the Employee.

8.9   Attornment. The Parties hereto hereby irrevocably submit to the non-exclusive jurisdiction of the courts of the State of New York.

8.10   Governing Law. This Agreement shall be construed and enforced in accordance with the laws of the State of New York (excluding its conflict of laws rules) and the federal laws of United States applicable therein.



9

8.11 <u>Legal Advice</u>. Each of the parties hereto has been advised to seek independent legal advice with respect to the provisions in the Agreement. Each party acknowledges that they thoroughly understand the provisions contained herein and has executed the Agreement with full knowledge of its contents and full knowledge of their rights.

IN WITNESS WHEREOF this Agreement is executed by the Parties hereto as of the date first above written.

PRINTERON AMERICA CORPORATION

By: _____
Name: Angus Cunningham
Title: CEO & President

EMPLOYEE

_____
Name: Denis Dreni

10

# EXHIBIT A

## Fiscal 2013 Commission Plan

**Employee:** Denis Dreni

**Position:** Director of Strategic Alliances & Enterprise Accounts

**Duties and Responsibilities:** Including but not be limited to:

Develop, implement and manage channel strategy

Work collaboratively with PrinterOn Executive Team to review, refine and implement PrinterOn business and IP strategy

Work collaboratively with PrinterOn Product Management and Marketing to review, refine and implement product and marketing strategy

Work collaboratively to support PrinterOn channels, i.e. transactional, hospitality and Ricoh business

Specific partners/targets including but not limited to:

- Implement, manage relationship with Nuance/Equitrac
  - Training (working with Nuance team to implement)
  - Marketing materials
  - Product development
  - Develop C Level relationship
  - Identify net new opportunities
- LRS (Levi, Rey and Shoup)
- Docomo
  - Expand relationship to Nomadix and NTT Docomo (parent)
- Konica Minolta
  - Develop OEM relationship
- Verizon
  - Manage internal mobile print project
  - Expand relationship
- T Mobile/AT & T
- Ingram
- Muratec
- American Campus Communities

**Target Market:** Enterprise Market
Enterprise End Users and Channel Partners
Strategic Partner relationships
List of partners/targets to be reviewed on an ongoing basis

| | |
|---|---|
| | "Other assigned opportunities" as defined, identified and approved by the VP of Sales and Marketing. |
| Annual Personal Quota: | $1,000,000 net new revenue in your Target Market. This Annual Personal Quota will be reviewed annually after which it may be changed at the discretion of an officer of the Corporation. Currently, annual reviews take place at the start of PrinterOn's fiscal year which at present is May 1st. All hardware, software, training and services revenue will count toward my annual quota. |
| Annual Company Target: | $5,200,000 Revenue for each fiscal year ended April 30. This Annual Company Target will be reviewed annually after which it may be changed at the discretion of an officer of the Corporation. |
| Base Compensation: | $135,000 |
| Variable Compensation: | All variable compensation will be renewed annually in conjunction with review of your Annual Personal Quota and the Annual Company Target, after which it may be changed at the discretion of an officer of the Corporation. Variable Compensation on Annual Personal Quota and Annual Company Target will be paid monthly. Variable Compensation on Temporary Personal Objectives will be paid quarterly. |
| Variable Compensation on Annual Personal Quota: | 4.5% of net new subscription revenue on net new subscriptions in your Target Market up to the first $1,000,000 of your Annual Personal Quota.<br><br>5.63% of net new subscription revenue on net new subscriptions in your Target Market over $1,000,000 of your Annual Personal Quota.<br><br>Hardware revenue will count toward your Annual Personal Quota and toward the Annual Company Target as long as minimum revenue per unit is maintained. The minimum revenue per unit is subject to change based on changes to PrinterOn's cost base of the products. As of the date of this agreement, the current minimum revenue per unit is as follows:<br>    PrintValet - $125 US<br>    PrintConnect (sold in North America) - $260 US<br>    PrintConnect (sold outside North America) - $275 US<br><br>Invoiced revenue uncollected within 90 days of invoice due date will result in reversal of commissions paid, which will be deducted from future commissions. Once collected, any amounts reversed will be included in commission payments.<br><br>Determination of commissions on extraordinary sales, as identified by the Vice President of Sales & Marketing, will be assessed and if applicable paid after receipt of payment from the customer. |
| Variable Compensation on | |


12

CONFIDENTIAL

PON 000152

Annual Company Target: Commission on achievement of Revenue equal to or less than the Annual Company Target for each fiscal year will be paid on achievement of stepped milestones as defined below:

| Revenue | Commission |
| --- | --- |
| $4,160,000 | $5,625 |
| $4,420,000 | $10,125 |
| $4,680,000 | $14,625 |
| $4,940,000 | $19,125 |
| $5,200,000 | $22,500 |

Commission on achievement of Revenue greater than the Annual Company Target for each fiscal year will be paid on a cumulative sliding scale as defined below:

| Revenue | >Annual Co Target | Commission |
| --- | --- | --- |
| $6,025,000 | $825,000 | 3.33% |
| $6,850,000 | $825,000 | 6.67% |
| $7,675,000 | $825,000 | 10.00% |
| $8,500,000 | $825,000 | 13.33% |
| >$8,500,000 | | 13.33% |

Temporary Personal Objectives: Notwithstanding the above, for the fiscal year ending April 30, 2013 you will have a variable component of $22,500 to be received on achievement of personal objectives to be defined by the Vice President Sales & Marketing and paid as defined by the Vice President Sales & Marketing.

13

CONFIDENTIAL

PON 000153